507 U.S. 290 (1993)
DEMOS
v.
STORRIE et al.
No. 92-6846.
United States Supreme Court.
Decided March 8, 1993.
ON MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS
Per Curiam.
Pro se petitioner John R. Demos, Jr., has made 48 in forma pauperis filings in this Court since the beginning of the October 1988 Term, many of which challenged sanctions imposed by lower courts for frivolous filings. Almost two years ago, we prospectively denied Demos leave to proceed in forma pauperis "in all future petitions for extraordinary relief." In re Demos, 500 U. S. 16, 17 (1991) (per curiam). At that time, we said that Demos "remains free under the present order to file in forma pauperis requests for relief other than an extraordinary writ, if he qualifies under this Court's Rule 39 and does not similarly abuse that privilege." Ibid. 
Since then, Demos has filed 14 petitions for certiorari. We denied the first seven petitions outright, and denied Demos leave to proceed in forma pauperis under our Rule 39.8 as to the following six. Today, we invoke Rule 39.8 again with respect to the instant petition. Demos is allowed until March 29, 1993, within which to pay the docketing fees required by Rule 38 and to submit the petition in compliance with this Court's Rule 33. Because Demos has refused to heed our prior warning, we further direct the Clerk to reject *291 all future petitions for certiorari from Demos in noncriminal matters unless he pays the docketing fee required by Rule 38 and submits his petition in compliance with Rule 33. See Martin v. District of Columbia Court of Appeals, 506 U. S. 1, 1-2 (1992) (per curiam). Demos' continued course of abusive filings plainly warrants this sanction.
It is so ordered. 
Justice Stevens, with whom Justice Blackmun joins, dissenting.
In my opinion, the administration of special procedures for disposing of repetitive and frivolous petitions is less efficient than our past practice of simply denying such petitions.[*] I continue to adhere to my previously stated views on this issue, see Martin v. District of Columbia Court of Appeals, 506 U. S. 1, 4 (1992) (Stevens, J., dissenting); Zatko v. California, 502 U. S. 16, 18 (1991) (Stevens, J., dissenting), and would deny certiorari rather than invoking Rule 39 in this case. Accordingly, I respectfully dissent.
NOTES
[*] Justice Souter joins only Part I of this opinion.
[] At the guilt phase of the trial, defense counsel moved to exclude "some confessions regarding 7 other crimes," including burglary, robbery, and stealing. Tr. 425 (Jan. 27, 1982). The motion was made not on the ground that the crimes were connected to the charged offense, cf. post, at 280, n. 1, or that they were committed while Lashley was a juvenile, but because they were "extremely prejudicial" and "[ir]relevant" to Lashley's guilt or innocence of the murder. Motion in Limine, Record 143 (Jan. 21, 1982). In a pretrial conference, defense counsel specifically stated that at least one of the crimes had been committed "a week or two" before the murderthat is, when Lashley was already an adult. Tr. 425 (Jan. 27, 1982). The presentence report contains additional evidence. Under the heading "Adult Arrest Record," the report indicates that Lashley was arrested for three offenses (robbery, burglary, and stealing) the day after his arrest for the present crime. Missouri Dept. of Social Services, Div. of Probation and Parole 2 (Mar. 23, 1982).
[] In support of a motion in limine respondent's counsel asked the court to exclude his client's confession of crimes unrelated to the offense on trial. He argued that the State had "extracted some confessions regarding 7 other crimes, a burglary second, a robbery first, stealing under, and I think it was a few more for a total of 7. One of the ones Lashley confessed to did involve the same victim's house. It was a week or two beforehand. My motion in limine is asking the Court to sustain my motion of course forbidding Mr. Bauer [the prosecutor] to bring these up." Tr. 425 (Jan. 27, 1982).
[] Although the majority is willing to rely on these unfounded remarks, see ante, at 273-274, the State itself did not present any such evidence at respondent's trial or sentencing, and it has not suggested to us (or to any lower court) that respondent actually committed a single criminal act between his 17th birthday and the murder of his cousin.

As the Court notes, ante, at 274, n., respondent argued both that this statement was "[ir]relevant," and that "to admit the statements or written confessions into evidence would be extremely prejudicial . . . ." Motion in Limine, Record 143 (Jan. 21, 1982). Respondent was correct, of course, about the improper prejudice that would have resulted from admitting statements about alleged crimes with which he was never charged and on which the State has never relied in arguing that the instruction in question was properly withheld. It is unfortunate that respondent was spared such prejudice in the trial court only to have it reapplied (under the Court's reading of a stray comment in the record) here.
[] The relevant Missouri statute provides:

"1. No adjudication by the juvenile court upon the status of a child shall be deemed a conviction nor shall the adjudication operate to impose any of the civil disabilities ordinarily resulting from conviction nor shall the child be found guilty or be deemed a criminal by reason of the adjudication.
. . . . .
"3. After a child is taken into custody as provided in section 211.131, all admissions, confessions, and statements by the child to the juvenile officer and juvenile court personnel and all evidence given in cases under this chapter, as well as all reports and records of the juvenile court are not lawful or proper evidence against the child and shall not be used for any purpose whatsoever in any proceeding, civil or criminal, other than proceedings under this chapter." Mo. Rev. Stat. § 211.271 (1978) (emphasis added).
[] Missouri Rev. Stat. § 565.012.3(1) (1978) (current version Mo. Rev. Stat. § 565.032.3(1) (Supp. 1991)) establishes the following as a statutory mitigating factor:

"The defendant ha[d] no significant history of prior criminal activity." Even if the statute did not so provide, our holding in Lockett v. Ohio, 438 U. S. 586 (1978), would require that consideration be given to that mitigating factor.
[] "A presumption may be called `an instrument of proof,'in the sense that it determines from whom evidence shall come, and it may be called something `inthe nature of evidence,' for the same reason; or it may be called a substitute for evidence, and even `evidence'in the sense that it counts at the outset, for evidence enough to make a prima facie case." Thayer 576.
[] The other two members of the panel did not agree with Chief Judge Arnold's opinion that this error constituted "a separate and distinct violation of the principle of Lockett v. Ohio, 438 U. S. 586 . . . (1978)," 957 F. 2d, at 1500-1501, n. 1, but they did not question his interpretation of state law.
[] We have made it clear that procedural safeguards constitutionally required at the guilt stage of a capital trial are also required at the penalty stage. Gardner v. Florida, 430 U. S. 349, 358 (1977) (plurality opinion) ("[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause"); Estelle v. Smith, 451 U. S. 454 (1981) (Fifth Amendment privilege against selfincrimination applies at capital sentencing); Bullington v. Missouri, 451 U. S. 430 (1981) (Double Jeopardy Clause applies at capital sentencing). In Bullington we actually considered the same Missouri statutes that regulated this respondent's capital sentencing, and held that "[b]y enacting a capital sentencing procedure that resembles a trial on the issue of guilt or innocence, however, Missouri explicitly requires the jury to determine whether the prosecution has `proved its case.' " Id., at 444 (emphasis in original).
[] It is true that respondent's claim of constitutional error focused on the trial court's refusal to prohibit cross-examination about his juvenile record and did not mention the presumption of innocence. Similarly, the Court of Appeals relied on the rationale of Lockett v. Ohio, 438 U. S. 586 (1978), without mentioning the presumption. Nevertheless, our jurisprudence firmly establishes that it is appropriate to affirm a judgment on a ground that was not raised below. It is manifestly unjust to reverse a correct judgment and to reinstate the death penalty simply because the basis for the judgment was not adequately articulated in earlier proceedings.
[] As the Court correctly notes, just as we have held generally that refusing to give an instruction on the presumption of innocence is not always reversible error, we have also held as a general matter that a capital defendant may be required to present evidence supporting a requested instruction on a statutory mitigating factor. Ante, at 275-276. We have even held that the State may require a capital defendant to support a requested jury instruction with a preponderance of the evidence. Walton v. Arizona, 497 U. S. 639 (1990). But we have never held that a defendant with a presumptively clean record must present additional evidence in support of that record to receive an instruction about it. Whether the presumption that a defendanteven a convicted capital defendantis innocent of all other crimes is viewed as evidence in his favor or merely as a rule of evidence imposing a burden of proof on the State, it means that the State must offer something to disprove it. Because the State in this case offered nothing to disprove it, the instruction was constitutionally required.
[] "We note that the Oklahoma death penalty statute permits the defendant to present evidence `as to any mitigating circumstances.' Okla. Stat., Tit. 21, § 701.10 (1980). Lockett requires the sentencer to listen." Eddings v. Oklahoma, 455 U. S. 104, 115, n. 10 (1982). "I disagree with the suggestion in the dissent that remanding this case may serve no useful purpose. Even though the petitioner had an opportunity to present evidence in mitigation of the crime, it appears that the trial judge believed that he could not consider some of the mitigating evidence in imposing sentence. In any event, we may not speculate as to whether the trial judge and the Court of Criminal Appeals actually considered all of the mitigating factors and found them insufficient to offset the aggravating circumstances, or whether the difference between this Court's opinion and the trial court's treatment of the petitioner's evidence is `purely a matter of semantics,' as suggested by the dissent. Woodson [v. North Carolina, 428 U. S. 280 (1976)] and Lockett require us to remove any legitimate basis for finding ambiguity concerning the factors actually considered by the trial court." Id., at 119 (O'Connor, J., concurring).
[] The Fifth Amendment privilege against self-incrimination, applied against the States through the Fourteenth Amendment in Malloy v. Hogan, 378 U. S. 1 (1964), clearly applies at the sentencing phase of a capital trial. Estelle v. Smith, 451 U. S., at 463 ("Given the gravity of the decision to be made at the penalty phase, the State is not relieved of the obligation to observe fundamental constitutional guarantees. See Green v. Georgia, 442 U. S. 95, 97 (1979); Presnell v. Georgia, 439 U. S. 14, 16 (1978); Gardner v. Florida, 430 U. S. 349, 357-358 (1977) (plurality opinion)").
[] The next issue the Court will confront in developing its Rule 39.8 jurisprudence,for instance,iswhether to apply ordersliketoday'sretroactively, to petitions pending on the date they are issued.