**In re Anthony R. MARTIN–TRIGONA, Movant.**

**In re George SASSOWER, Movant.**

Nos. 93–5008, 93–3041.

United States Court of Appeals, Second Circuit.

Submitted Sept. 10, 1993.

Decided Nov. 5, 1993.

Anthony R. Martin, submitted pro se papers in No. 93–5008.

George Sassower, submitted pro se papers in No. 93–3041.

Before: JON O. NEWMAN, Chief Judge, WINTER and ALTIMARI, Circuit Judges.

JON O. NEWMAN, Chief Judge:

The unfortunate tendency of some individuals to abuse the litigation process has prompted courts to adopt a variety of techniques to protect both themselves and the public from the harassing tactics of vexatious litigants. Usually these techniques are rules of general application, such as Rule 11 of the Federal Rules of Civil Procedure, authorizing sanctions for groundless lawsuits, and Rule 38 of the Federal Rules of Appellate Procedure, authorizing damages for taking a frivolous appeal. Occasionally, however, the tactics of certain individuals so far exceed the bounds of tolerable litigation conduct that courts have responded with specially crafted sanctions that impose severe limitations on the opportunity of such individuals to pursue their penchant for vexatious litigation.

In two unrelated matters initiated by two such sanctioned litigants, Anthony R. Martin (formerly known as Anthony R. Martin–Trigona) and George Sassower, we consider various procedural issues that arise from the imposition of such sanctions. Both litigants have been prohibited from filing any papers in this Court unless leave of court has first been obtained. They have submitted to the Clerk of the Court inquiries that challenge the procedures for determining whether such leave should be given. Treating these inquiries as motions, we conclude that proper procedures have been followed and deny the motions. Because the precise issues raised have not previously been discussed in the opinions of this Court, however, we deem it appropriate to set forth our views in a published opinion.

## Background

As a result of an extraordinary pattern of vexatious and harassing litigation pursued over several years by Martin and Sassower as *pro se* litigants, each was enjoined by this Court from filing any papers in this Court unless leave of court was first obtained. *See In re Martin–Trigona,* 737 F.2d 1254, 1263–64 (2d Cir.1984) (preliminary injunction), *injunction made permanent,* 795 F.2d 9, 12 (2d Cir.1986), *modified sub nom. Martin–Trigona v. Cohen,* 876 F.2d 307, 308 (2d Cir.1989); *Sassower v. Sansverie,* 885 F.2d 9, 11 (2d Cir.1989) (warning of injunction); *Sassower v. Mahoney,* No. 88–6203 (2d Cir. Dec. 3, 1990) (permanent injunction).

Thereafter, the Court determined the procedure that would be followed for considering applications for leave to file pursuant to these and all other injunctions imposing "leave to file" requirements. The procedure has several components: (1) all applications of any sanctioned litigant who is subject to a "leave to file" requirement are submitted for decision by one judge of this Court; (2) a particular judge is assigned to consider all the applications submitted by any one sanctioned litigant; (3) the judge to whom applications from a particular sanctioned litigant are assigned is selected by a procedure related to the seniority of the judges, further details of which will not be disclosed for reasons set forth in this opinion; and (4) the ruling of the assigned judge granting or denying leave to file is entered by the Clerk as an order of the Court, without disclosure of the identity of the judge who made the ruling.

*Martin's application.* On March 1, 1993, Martin filed a motion for leave to appeal a ruling of the District Court for the District of Connecticut. Pursuant to the procedures outlined above, that motion was referred for decision to the judge to whom Martin's "leave to file" motions have been assigned. The motion was denied on July 28, 1993, as reflected in an order entered for the Court by the Clerk. *See In re Martin–Trigona,* No. 93–5008 (2d Cir. July 28, 1993). On August 17, 1993, Martin wrote the Clerk

requesting the names of the judges who acted on the appeal in No. 93–5008.

*Sassower's application.* On April 23, 1993, Sassower filed a motion for leave to file a petition for a writ of mandamus and prohibition directed to a judge of the District Court for the Southern District of New York. Pursuant to the procedures outlined above, that motion was referred for decision to the judge to whom Sassower's "leave to file" motions have been assigned. The motion was denied on August 4, 1993, as reflected in an order entered for the Court by the Clerk. *See In re Sassower,* No. 93–3041 (2d Cir. Aug. 4, 1993). On September 10, 1993, Sassower wrote to a Deputy Clerk requesting the identity of the panels that had directed the entry of the denial order in No. 93–3041 and prior docket numbers in which "leave to file" motions had been denied.

The Court subsequently decided to adhere to the procedures previously adopted concerning "leave to file" motions submitted by sanctioned litigants, and to treat the letter requests of Martin and Sassower as motions to be considered by a three-judge panel.

## Discussion

Normally a court of appeals hears and adjudicates appeals sitting in a panel of three judges. *See* 28 U.S.C. § 46(b) (1988). It is also normal procedure for one judge of a court of appeals to adjudicate procedural motions, though normally one judge may not "dismiss or otherwise determine an appeal or other proceeding." *See* Fed.R.App.P. 27(c). The ultimate issue posed by the pending motions is whether the procedure adopted by this Court for the disposition of "leave to file" motions submitted by sanctioned litigants is a permissible exception to the normal appellate procedures.

The procedures authorized by statute and rule for the conduct of appeals contemplate appeals taken by litigants, whether appearing by counsel or acting *pro se,* who are proceeding in good faith to vindicate legitimate appellate rights. These procedures were never intended to be available for manipulation by individuals who have demonstrated an uncontrollable propensity repeatedly to pursue vexatious and harassing litigation.

■ The Supreme Court and numerous courts of appeals have recognized that courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities. This year, for example, the Supreme Court prohibited Sassower from obtaining *in forma pauperis* status, *see* 28 U.S.C. § 1915(a) (1988), with respect to petitions for certiorari and extraordinary writs in civil cases. *In re Sassower,* —— U.S. ——, 114 S.Ct. 2, 126 L.Ed.2d 6 (1993). The Court has ordered similar prohibitions with respect to other vexatious litigants. *See Demos v. Storrie,* —— U.S. ——, ——, 113 S.Ct. 1231, 1232, 122 L.Ed.2d 636 (1993) (petitions for certiorari); *Martin v. District of Columbia Court of Appeals,* —— U.S. ——, ——, 113 S.Ct. 397, 397, 121 L.Ed.2d 305 (1992) (same); *In re Sindram,* 498 U.S. 177, 180, 111 S.Ct. 596, 597–98, 112 L.Ed.2d 599 (1991) (extraordinary writs); *In re McDonald,* 489 U.S. 180, 180–85, 109 S.Ct. 993, 993–97, 103 L.Ed.2d 158 (1989) (same). Several circuits have similarly excepted vexatious litigants from the normal availability of *in forma pauperis* status in civil cases. *See, e.g., Visser v. Supreme Court of California,* 919 F.2d 113, 114 (9th Cir.1990) (mandamus petitions); *Maxberry v. S.E.C.,* 879 F.2d 222, 223–24 (6th Cir.1989) (appeals); *Johnson v. Cowley,* 872 F.2d 342, 344 (10th Cir.1989) (extraordinary writs).

Some courts have responded to vexatious litigants by completely foreclosing the filing of designated categories of cases. *See Villar v. Crowley Maritime Corp.,* 990 F.2d 1489, 1499 (5th Cir.1993) (upholding district court's injunctions against litigants preventing "any future litigation based on the underlying facts in [the] case, including future litigation in state courts."); *Demos v. U.S. District Court for the Eastern District of Washington,* 925 F.2d 1160, 1161 (9th Cir.) (barring litigant from filing any new petitions seeking extraordinary writs directed at the district courts of Washington), *cert. denied,* 498 U.S. 1123, 111 S.Ct. 1082, 112 L.Ed.2d 1186 (1991); *Castro v. United States,* 775 F.2d 399, 408–10 (1st Cir.1985) (upholding district

court's injunction preventing litigants from filing additional pleadings or relitigating any matters set forth in instant case or prior similar cases); *In re Green*, 598 F.2d 1126, 1128 (8th Cir.1979) (in banc) (barring litigant from seeking petitions for writ of mandamus challenging the regularity of district court proceedings).

Alternatively, courts have adopted the less drastic remedy of subjecting a vexatious litigant to a "leave of court" requirement with respect to future filings. *See, e.g., In re Burnley*, 988 F.2d 1, 3–4 (4th Cir.1992) (approving district court's order imposing pre-filing review system on litigant); *Ketchum v. Cruz*, 961 F.2d 916, 921 (10th Cir.1992) (upholding district court's order requiring litigant to obtain leave of court to proceed *pro se* in any further litigation); *Cofield v. Alabama Public Service Commission*, 936 F.2d 512, 518 (11th Cir.1991) (upholding district court's order requiring pre-filing approval of all litigants' pleadings); *Chipps v. U.S. District Court for Middle District of Pennsylvania*, 882 F.2d 72, 73 (3d Cir.1989) (modifying district court's order to require court permission for litigant's subsequent filings concerning particular dispute); *In the Matter of Davis*, 878 F.2d 211, 211–13 (7th Cir.1989) (upholding order requiring district court's five-judge Executive Committee to review all documents submitted by litigant to determine if matter should be filed); *Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C.Cir.1985) (enjoining *pro se* litigant from filing any civil action in any federal court without first obtaining leave of the forum court).

State courts have also fashioned exceptions to their normal litigation procedures in response to vexatious litigants. *See, e.g., Spremo v. Babchik*, 155 Misc.2d 796, 589 N.Y.S.2d 1019, 1024 (Sup.Ct.1992) (preventing litigant from filing any claim *pro se* in New York state courts); *People v. Dunlap*, 623 P.2d 408, 411 (Colo.1981) (in banc) (prohibiting litigants from representing themselves as plaintiffs in any present or future action against public officials in state courts).

With respect to Martin and Sassower, each has been sanctioned by a decision rendered by a three-judge panel of this Court, entered after affording each litigant an opportunity to show cause why the sanction should not be entered. The sanction subjects each litigant to a "leave to file" requirement with respect to future filings in this Court. We conclude that each aspect of the procedure adopted to implement the "leave to file" requirement is a permissible and warranted exception to the normal conduct of appellate litigation.

■ (A) Assigning "leave to file" applications to a single judge is a sensible allocation of judicial resources. Since these litigants have demonstrated by their past practices a penchant for repeated filings of frivolous applications, it can reasonably be expected that the determination of whether to grant leave to file will not present a more complicated issue than is encountered in the procedural motions that are authorized for consideration by a single judge. *See* Fed.R.App.P. 27(c). Should a particular application depart from the litigants' past practice and present a matter requiring plenary consideration, the one judge considering the application has full authority to authorize its filing, thereby bringing it within the purview of a three-judge panel.

■ (B) The designation of a particular judge to consider all "leave to file" applications from any one sanctioned litigant serves the purpose of providing that judge with a frame of reference against which to assess whether the new application presents a matter deserving plenary consideration or is only a continuation of the prior pattern of vexatious filings.

■ (C) Selecting the particular judge by a procedure related to the seniority of the judges assures that the particular judge assigned to consider the applications of each sanctioned litigant is initially chosen without regard to the identity of the litigant. We decline to disclose the precise method of using the seniority system since doing so would provide a basis for ascertaining the identity of the judge to whom a particular litigant's applications are assigned.

■ (D) Maintaining confidentiality concerning the identity of the judge is a reasonable precaution, necessitated by the unfortu-

nate tendency of some vexatious litigants to direct their harassing tactics personally at the judges whose rulings displease them. An example of the abuse that has prompted this precaution is the outrageous action taken by Martin (then known as Martin–Trigona) at an earlier stage of his protracted bankruptcy litigation when he sought to intervene in the state court divorce action of a federal judge and moved to have himself appointed as guardian *ad litem* of the judge's minor children. *See In re Martin–Trigona*, 737 F.2d at 1263. Making judges defendants in a repetitive series of lawsuits whenever a judge rules against a litigant is also a tactic employed by many vexatious litigants, including the two sanctioned litigants in the pending applications.

The procedures adopted by this Court for disposition of "leave to file" applications are a reasonable response to the harassing abuse of the litigation process that occasioned the imposition of the "leave to file" requirement. Litigants like Martin and Sassower who abuse the judicial system forfeit their right to the full panoply of procedures available in the conduct of normal litigation. The procedures adopted in response to the demonstrated abuse that has occurred are necessary for the courts, the judges, and ultimately for the public, many of whom are victimized when vexatious litigants are permitted unrestricted opportunities to pursue their tactics of harassment.[1]

The applications for disclosure of the identities of the judges who denied the "leave to file" motions are denied. So that this ruling may be challenged in the normal course of appellate review, we direct that any papers timely filed in this Court to petition for rehearing of this ruling, to suggest a rehearing in banc of this ruling, or to facilitate the timely filing of a petition for a writ of certiorari in the Supreme Court seeking review of this ruling will be exempted from the "leave to file" requirements.

---

1. One of the mischievous consequences of permitting vexatious litigants unrestricted access to courts is the publicity they obtain for themselves, often at the expense of innocent bystanders, when irresponsible elements of the press accord major, often sensationalized coverage to their legal machinations. A recent example concerned one of the applicants in the pending matter. The September 29, 1993, edition of the *New York Daily News* contains on page 3, under a headline in one-inch high letters, an allegation levelled by Martin against two well-known movie stars. The *Daily News* report gives major prominence to the allegations, even as it notes the following:

> Meanwhile, reporters in Florida said they knew Martin well enough not to cover the press conference.
>
> "He's a complete lunatic, fringe, basket-case weirdo nut," said one.
>
> "He's basically a menace to society," the reporter said.