**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CHARLIE L. RICHARDSON,
<u>Plaintiff-Appellant,</u>

v.

No. 97-2313

CABARRUS COUNTY BOARD OF
EDUCATION,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Carl Horn, III, Chief Magistrate Judge.
(CA-94-416-3-H)

Argued: May 6, 1998

Decided: June 9, 1998

Before MURNAGHAN and HAMILTON, Circuit Judges, and
MICHAEL, Senior United States District Judge for the
Western District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Michael Anthony Sheely, Charlotte, North Carolina, for
Appellant. Richard Lee Rainey, WOMBLE, CARLYLE, SAN-
DRIDGE & RICE, P.L.L.C., Charlotte, North Carolina, for Appellee.
**ON BRIEF:** Jim D. Cooley, Patricia E. Dowds, WOMBLE, CAR-
LYLE, SANDRIDGE & RICE, P.L.L.C., Charlotte, North Carolina,
for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this case, we consider an appeal from an Order granting the defendant's motion to dismiss this action alleging race discrimination in employment. The Order also barred the plaintiff from filing a similar Title VII action against his employer arising from a then-pending EEOC right to sue notice, released the defendant from a putative settlement agreement, and assessed attorneys' fees and costs against the plaintiff from the date the court below found that he sent the first of three threatening or intimidating letters to a trial witness. The same Order denied plaintiff's motion to enforce the purported settlement agreement. For the following reasons, we will affirm the decision of the district court.

I.

Charlie Richardson ("Richardson") brought this action alleging racial discrimination and retaliation in an unfavorable job evaluation in June 1993, and the Board's failure to promote him to a number of positions from January 1993 to October 1994. Richardson asserted that the discrimination and retaliation violated 42 U.S.C. §§ 1981 (Civil Rights Act of 1866), 1983 (Civil Rights Act of 1871) and 2000e et seq., (Title VII of the Civil Rights Act of 1964).

One count of Richardson's complaint survived summary judgment; that count alleged racially discriminatory failure to promote him to assistant principal at Concord Middle School in September 1994. The case was tried to a jury on November 12-18, 1996. During trial, the court granted, in part, defendant's motion for judgment as a matter of law (i.e., a directed verdict) and dismissed Richardson's §§ 1981 and 1983 claims. The jury hung on the remaining Title VII claim, and the presiding district judge declared a mistrial.

2

The court scheduled the retrial to begin on March 11, 1997. Prior to trial, the parties' lawyers apparently reached an agreement settling the lawsuit and also a then-pending EEOC right to sue notice issued to Richardson after the mistrial. The right to sue notice arose from discrimination charges Richardson had lodged against the Board related to a failure to promote on another occasion. On December 3, 1996, several weeks after the mistrial, Ms. Jessie Blackwelder ("Blackwelder"), Assistant Superintendent of Cabarrus County Schools, received an anonymous letter in the mail. Ms. Blackwelder had been a central defense witness in the first trial and would have been called again in the retrial. Joint Appendix ("JA") 103. The letter, the district court found, was "moderately threatening in general tone." Id. The court further stated:

> It referred to Ms. Blackwelder's "lies," noted that it was time "to get [her] back," and referred to "incriminating evidences" which would be revealed "to Mr. Richardson's attorney ... [and] to Judge Horn [the presiding judge at trial], too" unless Mr. Richardson received an administrative position "immediately." Besides disclosure of the "incriminating evidences," the letter "promise[d]" Ms. Blackwelder jail, fines, and "sudden retirement" if she did not cooperate with the anonymous author's demands.

JA 103-04.

On about April 8, 1997, Ms. Blackwelder received a second anonymous letter. As the district court found:

> This letter praised Mr. Richardson "FOR NOT SIGNING ANYTHING," advised "THAT MR. RICHARDSON IS SEEKING ANOTHER'S [sic] COUNSEL [ sic] ASSISTANCE," and referred to the "THE CHEAP ASS DEAL YOU'LL [sic] THOUGHT [Richardson] WOULD TAKE. ..."

JA 105. The court found that this letter represented the "strongest condemnation of the purported settlement." JA 105. Apart from the settlement, the letter:

3

> [H]ad an angrier, and consequently a more threatening tone. It was also more obscene, calling Ms. Blackwelder a string of sexually-oriented epithets, and stating that she would be "SICK, CRAZY, AND RETIRED" if she did not "READ MY FIRST LETTER, IF YOU KNOW WHAT I MEAN!"

Id. On about April 10, 1997, a third anonymous letter, addressed to Ms. Blackwelder's husband, was received by Ms. Blackwelder. The letter said of Ms. Blackwelder, "SHE WILL LEARN NOT TO `[expletive deleted]' WITH ME...." JA 106.

The School Board requested an evidentiary hearing to determine if Mr. Richardson was engaging in witness tampering or intimidation. The court held two such hearings on May 12 and July 2, 1997. Following the hearings, the Board filed a motion to dismiss Richardson's action with prejudice, to bar plaintiff from filing any action related to his then-pending EEOC right to sue notice in another matter, to release the Board from the settlement agreement, and to assess attorneys' fees and costs against the plaintiff. On August 1, 1997, Richardson filed a motion to enforce the settlement agreement. On August 29, 1997, the district court granted the Board's motion and denied Richardson's motion. This appeal by Richardson followed.

II.

When a party to a lawsuit deceives the court or abuses the litigation process in a manner utterly inconsistent with the orderly administration of justice or so as to undermine the integrity of the judicial process, the court has the inherent power to dismiss the suit. United States v. Shaffer Equipment Co., 11 F.3d 450, 462 (4th Cir. 1993). On appeal, the district court's use of that inherent power is reviewed for abuse of discretion. Id. In reviewing the district court's factual findings on which it based its decision to dismiss the action, the "clearly erroneous" standard applies. Id. at 456.

III.

A. Findings of Fact

The record is replete with evidence that supports the district court's finding that Mr. Richardson wrote the letters to Ms. Blackwelder in

4

an attempt to persuade her not to testify or to alter or modify her testimony in the retrial of this case.

1. <u>Richardson Wrote the Three Letters to Ms. Blackwelder</u>

The district court found that "the plaintiff typed and mailed the three anonymous letters." JA 109. A forensic document examiner testified at the evidentiary hearing that, based on certain distinguishing characteristics he observed, the first letter to Ms. Blackwelder was typed on the same typewriter as three sample letters from Richardson's personnel file known to have been typed by him. JA 322-23. The expert noted similarities in the letters' typeface (pica) and character alignment. JA 323-26.

Furthermore, the texts of the three letters suggest that they share a common author. The second letter begins with the statement, "HI! REMEMBER ME! I'M BACK!" JA 363. The second letter continues, "JESSIE ELIZABETH DID YOU THINK THAT I WOULDN'T BE IN TOUCH AGAIN!" <u>Id.</u> As well, all three letters employ similar phrasing and punctuation including the extensive use of exclamation marks, vulgar language, references to Ms. Blackwelder as "Jessie Elizabeth," and the use of the abbreviation "assist." for the word "assistant."

The three letters' substance also points to Richardson as the author. The second letter refers at length to the settlement negotiations in the case. The letter states:

> I AM SO PROUD OF MR. RICHARDSON FOR NOT SIGNING ANYTHING.... THE CHEAP ASS DEAL YOU'LL [sic] THOUGHT HE WOULD TAKE WANT [sic] WORK. HA! HA! HA! ... MAKING DEALS UNDER THE TABLE WITH LAWYERS ALL WAYS [sic] COME ON TOP OF THE TABLE....

JA at 363. The fact that, as of the date of the second letter, no final settlement agreement had been signed was confidential information known only to the lawyers, Richardson, Richardson's family, and a "former professor" of the plaintiff's. JA 241, 247-48, 294, 312. The

5

second letter also recites that Richardson was seeking assistance from a second attorney (in addition to the one representing him in the settlement). Only the plaintiff and, perhaps, his immediate family would have known of this development.

## 2. Richardson's "Denials"

At the May 12 evidentiary hearing, Richardson refused to testify, invoking his Fifth Amendment privilege against self-incrimination. JA 189. To the extent that the district court relied on Richardson's refusal to testify as evidence of his involvement in the letter writing, such reliance is proper. Baxter v. Palmigiano, 425 U.S. 308, 318 (1976) ("[T]he Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not preclude the inference where the privilege is claimed by a party to a civil cause.").

At the second evidentiary hearing, on July 2, Richardson testified that someone else must have written the letters because he kept his typewriter at school and previously had had problems with unknown persons "plundering" his work area. JA 219. The principal of the school, however, testified that Richardson never complained to anyone about any such "plundering" or any type of unauthorized entry into his classroom area. JA 338. Only Richardson's testimony in any way suggested that a typewriter pillager may have written the letters. Of Richardson's testimony, the district court explicitly found that he "perjured himself repeatedly and extensively in his testimony before this Court on July 2, 1997." JA 109. The Board's burden of proof that Richardson wrote the letters was "by the preponderance of the evidence." Based on the weight of the evidence adduced, we hold that the district court did not commit clear error in finding that the defendant met its burden nor did the court err in finding that Richardson wrote all three letters.

## B. Intimidation of the Witness

Richardson claims that because Ms. Blackwelder testified that she felt "threatened" from the letters, but not "intimidated," the district

6

court committed clear error when it found that Richardson intimidated or attempted to intimate Ms. Blackwelder. Appellant's Brief at 16.

Richardson's semantic distinctions ignore the substance of Ms. Blackwelder's testimony. She stated that the letters made her feel "shocked" and "stunned;" she became physically ill and she feared for the safety of herself and her family. JA 291-92. We hold, therefore, that the district court did not clearly err when it found, based on the "threatening" tone of the letters and the implicit threats therein,* that the writings were issued in an attempt to intimidate.

C. <u>Dismissal</u>

Given that the court fairly concluded that Richardson either had intimidated or had attempted to intimidate Ms. Blackwelder, it possessed the inherent power to take steps to protect the integrity of the judicial process and of the court itself. As we have instructed previously:

> [W]hen a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity of the process, the court has the inherent power to dismiss the action.

<u>Shaffer Equipment</u>, supra, 11 F.3d at 462 (4th Cir. 1993) (recognizing authority of court to dismiss in response to attorney's violation of duty of candor to the court); <u>see also Frumkin v. Mayo Clinic</u>, 965 F.2d 620, 626 (8th Cir. 1992) (recognizing that "considerable deference" should be given to a district court's decision whether to dismiss in response to plaintiff's intimidation of witnesses). In <u>Shaffer Equipment</u>, we wrote that:

> Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates.

_____

*"IMMEDIATE RESULTS IN THIS CASE MUST BE GIVE IT'S [the Board's] FULLEST ATTENTION OR AGAIN, BYE, BYE, QUEER QUEEN BEE JESSIE ELIZABETH.... IT'S UP TO YOU OR ELSE...." JA 363.

> This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers....Under the inherent power, a court may issue orders, punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to exercise the power, bar persons from the courtroom, assess attorneys' fees, and dismiss actions. Since orders dismissing actions are the most severe, such orders must be entered with the greatest caution.

Shaffer Equipment, 11 F.3d at 461-62. Before exercising the inherent power to dismiss, a district court must consider the following factors: (1) the degree of the wrongdoer's culpability, (2) the extent of the client's blameworthiness if the wrongful conduct is committed by the attorney, (3) the prejudice to the judicial process and the administration of justice, (4) the prejudice to the victim, (5) the availability of other sanctions, and (6) the public interest. Id. at 462-63.

Here, even though the district court did not explicitly apply each Shaffer Equipment factor to the fact pattern presented, it certainly considered them. The court cited Shaffer Equipment and expressly mentioned its factors in support of its holding that"no judicial response short of dismissal would be adequate to protect the integrity of the court or `the public interest.'" JA 111. Accordingly, we hold that the court did not abuse its discretion in dismissing, with prejudice, Richardson's action.

D. Barring Suit on the Right-to-Sue Notice

Courts may resort to restrictive measures that exclude parties who have abused their litigation opportunities from normally available judicial proceedings. In re Martin-Trigona, 9 F.3d 226, 228 (2d Cir. 1993). Pursuant to a court's inherent power to regulate the judicial process, it may enjoin litigants who have abused the system from filing further lawsuits. Id. (citing, inter alia, Villar v. Crowley Maritime Corp., 990 F.2d 1489 (5th Cir. 1993) (upholding district court's injunctions against litigants filing any future litigation based on the same underlying facts)). To be sure, most instances in which a party is enjoined from future litigation arise from the party filing multiple frivolous claims. Nonetheless, the rationale behind the court's inher-

8

ent power is apposite here. The district court found that Richardson engaged in witness intimidation by sending sordid and intimidating letters to a key witness for the Board. Permitting Richardson to go forward with another, similar action against the same defendant who likely would marshal the same witnesses in defense of the new lawsuit would tempt fate and risk repetition of Richardson's abusive behavior. We hold, therefore, that the court did not abuse its discretion in enjoining Richardson from bringing an action based on the EEOC right to sue notice.

E. Attorneys' Fees and Costs

"[A] court may assess attorney's fees when a party has acted in bad faith, vexatiously, wantonly or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991) (internal quotations and citations omitted). "[I]f a court finds that fraud has been practiced upon it, or that the very temple of justice has been defiled, it may assess attorney's fees against the responsible party[.]" Id. at 46 (internal quotations and citations omitted).

Here, Richardson's misconduct forced the Board to incur additional fees and costs ($41,846.01) from the date of the first letter to Ms. Blackwelder. JA 129. We hold that ordering the offending party to pay those fees and costs was not an abuse of discretion by the court below.

F. The Settlement Agreement

Although counsel for both Richardson and the Board represented to the district court that a tentative settlement had been reached between the attorneys and only needed to be made final, sufficient evidence in the record suggested that Richardson personally did not believe there was a settlement. Thus, the court reasonably could have concluded (as it did) that no "meeting of the minds" as to the settlement had occurred at the time Richardson sent the three letters.

The district court found that in March 1997, Richardson made "critical statements about the settlement" to a deputy clerk of court at the Clerk's Office. JA 104-05, 112-13. At the evidentiary hearing, the

9

clerk testified that on the day scheduled for the retrial, Richardson came to the office and asked if the trial would take place. "He continued to say that it [the case] was not settled. That he had tried to contact Mr. Gresham [Richardson's attorney] over the weekend and had no response and had not talked with him at all; and as far has he [Richardson] was concerned, the trial was on." JA 356. As the plaintiff left the office, he stated that "he would get to the bottom of it." Id. Moreover, the second letter to Ms. Blackwelder, as excerpted above, indicates that Richardson vehemently opposed the terms of the proposed settlement agreement. See JA at 363.

The district court based its decision to refuse to enforce the settlement on the fact that Richardson had engaged in witness intimidation and on the fact that no meeting of the parties' minds had occurred. JA 112-13. Of the plaintiff's culpable conduct in sending the three letters, the court wrote:

> Counsel for plaintiff concedes that "[t]he March, 1997 letters, especially the one addressed to Mrs. Blackwelder[,] are base documents and may provide Mrs. Blackwelder with a civil action for damages as well as a criminal complaint." Counsel also concedes that writing such letters might constitute "a basis to discharge Mr. Richardson [from employment, pursuant to] N.C.G.S. §115C-325...." In spite of these concessions, however, counsel argues that "the letters should not serve as the basis for setting aside the settlement."

> The undersigned, although an admirer of counsel's intelligence, fails to see how civil damages, criminal charges and penalties, and termination of employment might all be warranted, yet the offending party remain[s] entitled to enforcement of a settlement agreement.

> To the contrary, neither law nor equity weigh in favor of enforcement of this settlement agreement--if, in fact, there ever was such an agreement. Accordingly, plaintiff's Motion To Enforce Settlement Agreement (a.k.a. the"cheap ass deal") must and shall be denied.

10

JA 113-14.

The court's reasoning is an eloquent exposition of the rationale behind its inherent power to set aside a settlement agreement; a court must be free to protect its integrity, send a message to the public, and prevent a misbehaving litigant from profiting from his own wrongdoing, consistent with Shaffer Equipment, supra. Because the court acted well within that inherent power, we hold that it did not abuse its discretion in declining to enforce the settlement agreement.

IV.

For the foregoing reasons, the decision of the court below shall be, and it hereby is,

AFFIRMED.

11