STATE

v.

## Arthur D'AMARIO, III

No. 97–567–C.A.

Supreme Court of Rhode Island.

Jan. 21, 1999.

Andrew Horwitz, for defendant.

Before WEISBERGER, C.J., and LEDERBERG, BOURCIER and FLANDERS, JJ.

## OPINION

LEDERBERG, Justice.

This case came before the Supreme Court on the appeal of the defendant, Arthur D'Amario, III. Following a bail-violation hearing in the Superior Court, the defendant entered into a plea agreement that restricted his *pro se* access to the courts for a period of three years, an agreement that he later challenged. Following the trial justice's denial of his motion to "correct an illegal sentence or to correct a sentence imposed in an illegal manner," the defendant appealed. For the reasons stated below, we uphold the order as modified by this opinion. A summary of the pertinent facts follows, with additional details provided in the analysis of the issues raised by this appeal.

### Facts and Procedural History

The defendant in this case has an extensive history as a litigant in Rhode Island courts. According to the State's compilation, defendant instigated at least seventeen suits in the Rhode Island Superior Court from 1983 to 1996. According to the State, defendant also initiated at least nine actions in the United States District Court for the District of Rhode Island between 1987 and 1997. Most of defendant's cases involved allegations of legal or medical malpractice, personal injury, or petitions for post-conviction relief. All resulted from one of two incidents: a 1973 psychiatric confinement of defendant, and a 1986 "simple assault charge" against defendant at the Providence Civic Center.

In the course of his legal maneuvers, defendant wrote a letter dated December 21, 1995, received at some point by Special Assistant Attorney General Jametta O. Alston, in which defendant appeared to threaten her life.[1] On February 13, 1996, a criminal infor-

Aaron Weisman, Assistant Attorney General, for plaintiff.

1. The defendant was known to refer to Special Assistant Alston as "Marcia Clark." The defendant's letter read in relevant part: "Next year will be '1996: Year of Change, Year of Progress.' What's going to change is 'Marcia Clark's' [sic] address. She'll be moving to a cemetery, be-

mation charged that defendant did "corruptly, maliciously, recklessly, by threat, by force, by a threatening letter and/or by a threatening communication endeavor to influence, obstruct and impede the due administration of justice, in violation of § 11–32–3 of the General Laws of Rhode Island." Surety bail was set at $10,000, and defendant was released on his own recognizance, with the condition that he keep the peace and be of good behavior.

On August 1, 1996, however, another incident occurred. Assistant Attorney General James Lee (Lee) was representing the State, in an unrelated case involving defendant in a Providence County Superior courtroom, when defendant became violent toward Lee and criticized his prosecution of the case. After he became agitated, defendant proceeded to curse at Lee. At a later hearing, two witnesses testified that defendant appeared to be about to strike Lee before two sheriffs escorted defendant from the courtroom. The Office of the Attorney General argued that this incident constituted a violation of the conditions of defendant's March 8, 1996 release. On August 2, 1996, defendant was arrested pursuant to a two-count criminal complaint charging defendant with threatening a public official and resisting a lawful arrest.

On August 14, 15, 20, and 21, 1996, a bail-violation hearing was held before a Superior Court Justice, at which defendant appeared *pro se*. After the hearing, the justice found that defendant's conduct was threatening and that the conditions of defendant's bail had been violated. At that point in the proceedings, defendant requested that an attorney be appointed to represent him and specifically requested attorney Leonard O'Brien (O'Brien). The justice then appointed O'Brien to represent defendant.

On October 7, 1996, defendant entered pleas of *nolo contendere* to one charge of obstruction of the judicial system and one charge of disorderly conduct, pursuant to a plea agreement negotiated with the State. As part of this agreement, the State moved to amend the charge of "threats to public

officials" to a charge of "disorderly conduct" in violation of G.L.1956 § 11–45–1, and further moved to dismiss the charge of resisting arrest. This plea agreement was approved by the hearing justice, and defendant was sentenced on October 8, 1996, to three years probation, subject to the conditions of the negotiated agreement. The sentence stated: "Eighteen (18) months at the ACI, suspended and three (3) years probation subject to the special conditions outlined in the order of this same date."

Under the terms of the sentence, the conditions of the stipulation and the order remain in effect for the duration of the three-year probationary period. The stipulation stated, in part:

"Arthur D'Amario, III, *** hereby agreed that the probationary terms which have been imposed following his pleas of Nolo Contendere on this date are subject to the following conditions:

"1. Subject to the exception which is described below, Arthur D'Amario, III shall not file an appearance *pro se* nor proceed *pro se* with regard to any complaint, petition or other matter before any court of the State of Rhode Island or before any board, agency or commission which is part of the Rhode Island Judiciary;

"2. Through counsel, the defendant may petition a Rhode Island court or judicial entity for permission to proceed *pro se* and, if said written permission is granted, may appear or file pleadings on his own behalf subject to whatever limitations that court or entity may set."

In pertinent part, the order read:

"That in addition to the general terms of probation which have been set *** the defendant shall:

"1. abide by the terms of the stipulation *** prohibiting his future *pro se* representation;

"2. immediately enter conditional dismissals in the cases, *D'Amario v. Margadonna et al,* [sic] *** and *D'Amario v. Silverman* ***; said dismissals to be final

cause I'm bringing in some professional gunmen from Chicago to assassinate her. It's going to be

done in Kennedy Plaza with hundreds of witnesses to send a message."

and with prejudice, unless a licensed Rhode Island attorney enters each respective case within sixty (60) days of the date of this order;

"3. immediately enter unconditional dismissals with prejudice of all other matters which he has pending before the courts and judicial agencies of the state of Rhode Island, including but not limited to the following matters which are pending in the Rhode Island Supreme Court ***.

"4. refrain from any and all contact with the office of the Rhode Island Attorney General or any employee of that office."

These terms of the agreement are the subject of the instant appeal. On February 5, 1997, defendant, represented by two attorneys, Andrew Horwitz (Horwitz) and Daniel E. Ciora, moved to "correct an illegal sentence or to correct a sentence imposed in an illegal manner" pursuant to Rule 35 of the Superior Court Rules of Criminal Procedure.[2] The defendant argued that two of the conditions, namely, the dismissal of all pending civil matters and the barring of *pro se* filings, (1) violated article 1, section 5, of the Rhode Island Constitution and several provisions of the United States Constitution by precluding defendant from exercising his constitutional right of access to the courts; (2) violated article 1, section 8, of the Rhode Island Constitution and the Eighth Amendment to the United States Constitution because the conditions constituted cruel and unusual punishment; (3) were illegal as a violation of public policy; and (4) constituted an abuse of discretion. The hearing justice denied the motion by order dated March 7, 1997.

On April 7, 1997, defendant moved to have an order denying his motion to correct sentence entered *nunc pro tunc*. Defense counsel Horwitz argued that he was unaware that an order was signed on March 7, 1997, and claimed that on March 27, 1997, he reviewed the court file in an unsuccessful search for an order denying his motion to correct sentence. On that date, Horwitz, appearing before the same justice on an unrelated matter, brought the issue of the missing order to the attention of the justice, who suggested that counsel prepare an order to be signed. On April 4, 1997, Horwitz presented an order to be entered *nunc pro tunc*. At that time, however, it was determined that the original March 7, 1997 order was, at least at that point in time, in the court files. The justice entered an order denying the motion *nunc pro tunc* on April 7, 1997, and on April 8, 1997, defendant appealed the denial to this Court.

### Volenti Non Fit Injuria[3]

■ At the conclusion of the August 1996 bail-violation hearing at which he appeared *pro se*, defendant made the specific request that he be represented by attorney O'Brien. The hearing justice immediately accommodated this request and appointed O'Brien.

On October 7, 1996, defendant, represented by O'Brien, pleaded *nolo contendere* to one charge of obstruction of the judicial system and one charge of disorderly conduct. At this hearing, O'Brien presented the court with the conditions of the plea agreement, which had been drafted following many discussions between defendant and his lawyer, O'Brien. This plea was no doubt in defendant's best interests, because facing a trial on the felony charge of threatening a public

2. Rule 35 of the Superior Court Rules of Criminal Procedure, "Correction, decrease or increase of sentence" provides in relevant part:
"The court may correct an illegal sentence at any time. The court may correct a sentence imposed in an illegal manner and it may reduce any sentence within one hundred twenty (120) days after the sentence is imposed, or within one hundred twenty (120) days after receipt by the court of a mandate of the Supreme Court of Rhode Island issued upon affirmance of the judgment or dismissal of the appeal, or within one hundred twenty (120) days after receipt by the court of a mandate or order of the Supreme Court of the United

States issued upon affirmance of the judgment, dismissal of the appeal, or denial of a writ of certiorari."

3. The maxim *"volenti non fit injuria"* stands for the proposition that when an individual knows and comprehends the danger, but voluntarily exposes himself or herself to it, that person is deemed to have assumed the risk and is precluded from recovering for an injury resulting therefrom. *Munson v. Bishop Clarkson Memorial Hospital,* 186 Neb. 778, 186 N.W.2d 492, 494 (1971). *See also* Blacks' Law Dictionary 1575 (6th ed.1990).

official carried with it the risk of being convicted and sent to prison. After O'Brien presented the conditions of probation to the court, the trial justice undertook an inquiry to make certain that defendant understood the ramifications of the agreement. The justice carefully outlined the prohibition on defendant's *pro se* appearances, in order to ensure that defendant had no objection or confusion regarding its meaning:

"THE COURT: [The plea bargain] means that if you decide that you don't want to abide by these agreements today and you think that you need to resort to airing your grievances in this judiciary, you must obtain counsel to file a petition with the Court before you can proceed *pro se,* do you understand that?

"THE DEFENDANT: Yes.

"THE COURT: Now, I'm telling you, Mr. D'Amario, I can't be any clearer. You have to get a lawyer to do that first. You can't file anything. You think you are going to be able to stick to that?

"THE DEFENDANT: Yes, I do.

"MR. O'BRIEN: Your Honor, I would like to put on the record now that I've reviewed with Mr. D'Amario all of the aspects of this particular order."

The justice also gave defendant an opportunity to ask questions, and defendant responded that all his questions had been answered. When asked "Have you had an adequate opportunity to think this over?" defendant said that he had. The defendant told the hearing justice that after considering the matter, he believed that he could abide by the conditions of the agreement. The justice read the plea aloud, explaining the meanings of the rights that defendant was waiving by pleading *nolo contendere,* and after each provision, asked defendant if he was in agreement with the various conditions. For each condition, defendant answered that he consented. The defendant again agreed that the plea agreement was voluntary. After acknowledging defendant's willingness to abide by the conditions, the hearing justice directed that the hearing be continued for the following afternoon. At that time, defense counsel informed the court that he would review the orders again with

defendant in the interim. Therefore, in addition to being represented by his choice of counsel, and having assisted his counsel in the design of the plea agreement that protected him from felony charges, defendant, after thorough questioning by the hearing justice, also had the opportunity to "sleep on" his decision to enter into the plea agreement. The defendant may not now succeed in claiming that his rights were violated by the very plea agreement he designed to avoid facing trial and a possible prison sentence.

## Restriction of Access to the Courts

On appeal, defendant did not contest the voluntariness of this plea, but instead contended that a complete prohibition of his right of access to the courts was not waivable. The defendant argued that the conditions violated the federal and state constitutions and effectively denied his right to access the courts, and as such could not be waived.

■ The United States Supreme Court, however, repeatedly has held that a litigant's access to the courts may indeed be limited to preserve the courts' resources. For example, in *Martin v. District of Columbia Court of Appeals,* 506 U.S. 1, 113 S.Ct. 397, 121 L.Ed.2d 305 (1992), the Supreme Court held that a litigant with a history of filing numerous noncriminal frivolous suits and abusing the writ of certiorari was barred from petitioning for certiorari in noncriminal cases unless he paid the docketing fee required. *See also Brown v. Williams,* 522 U.S. 1, 118 S.Ct. 1, 139 L.Ed.2d 1 (1997) (same); *In re Gaydos,* 519 U.S. 59, 117 S.Ct. 466, 136 L.Ed.2d 369 (1996) (same); *Shieh v. Kakita,* 517 U.S. 343, 116 S.Ct. 1311, 134 L.Ed.2d 464 (1996) (same); *Jones v. ABC–TV,* 516 U.S. 363, 116 S.Ct. 870, 134 L.Ed.2d 1 (1996) (same); *Attwood v. Singletary,* 516 U.S. 297, 116 S.Ct. 769, 133 L.Ed.2d 721 (1996) (same); *Whitaker v. Superior Court of California, San Francisco County,* 514 U.S. 208, 115 S.Ct. 1446, 131 L.Ed.2d 324 (1995) (same); *Demos v. Storrie,* 507 U.S. 290, 113 S.Ct. 1231, 122 L.Ed.2d 636 (1993) (same); *Zatko v. California,* 502 U.S. 16, 112 S.Ct. 355, 116 L.Ed.2d 293 (1991) (same). The Supreme Court based its holding on the deleterious

effect such "pattern[s] of abuse" have on the courts' "fair allocation of judicial resources." *Martin,* 506 U.S. at 3, 113 S.Ct. at 398, 121 L.Ed.2d at 308. The Court pointed to its earlier holding in *In re McDonald,* 489 U.S. 180, 184, 109 S.Ct. 993, 996, 103 L.Ed.2d 158, 164 (1989), and stated that "[a] part of the Court's responsibility is to see that [its] resources are allocated in a way that promotes the interests of justice." *Martin,* 506 U.S. at 3, 113 S.Ct. at 398, 121 L.Ed.2d at 308. Although defendant in the instant case paid a filing fee, we read these cited opinions as justifying the placing of reasonable limits on the filings of litigants who abuse the judicial system. The United States Supreme Court has indicated clearly that courts have limited resources and that relentless, frivolous filings constitute unreasonable demands on those resources. Therefore, it is clear that the right at issue here is not so fundamental as to be completely unwaivable in certain instances.

█ Given the circumstances of this case, including the hearing justice's finding that allowing defendant to continue to proceed *pro se* presented "a real threat to the judiciary, opposing counsel and to [defendant's] own well-being," as well as the limited duration of the conditions, the conditions of the plea agreement constituted reasonable limitations that did not affect rights so fundamental as to be unwaivable.

### Modification of the Order

█ It is amply clear that the Supreme Court consistently has limited the restrictions on *in forma pauperis* filings to the type of actions that defendant has filed. In that respect, we approve the provisions of the order insofar as it restricts defendant's access to the courts for the duration of defendant's three-year probationary period. However, consistent with the Supreme Court's holdings, we are of the opinion that such a sanction should be drawn narrowly. *See Martin,* 506 U.S. at 3, 113 S.Ct. at 398, 121 L.Ed.2d at 308 (limiting petitioner's sanction to noncriminal cases because petitioner's abuse of the writ of certiorari occurred solely in noncriminal cases), and *Attwood,* 516 U.S.

at 298, 116 S.Ct. at 770, 133 L.Ed.2d at 723 (same).

█ Consequently, we affirm the order, but modify it insofar as it might be construed to prevent defendant from appearing *pro se* in cases in which he is a defendant. It is implicit that the order was not intended to restrict defendant's ability to defend himself. Moreover, we are of the opinion that defendant retains the right to petition a justice of a relevant court to seek relief from the order in an appropriate circumstance without *ipso facto* violating the terms of his probation. If a justice of a court in which defendant wishes to proceed agrees to allow defendant to proceed *pro se,* then defendant may do so. Otherwise, the restrictions imposed by the order remain in effect for the applicable period.

In conclusion, the limitations imposed in this case do not violate the defendant's constitutional rights for the following reasons. First, an attorney of the defendant's own choosing along with the defendant were responsible for offering the plea agreement that the defendant has challenged. Second, after extensive and careful questioning by the hearing justice, the defendant expressly, explicitly, and voluntarily agreed to the provisions of the agreement. Third, the stipulation and order, as modified by this opinion, restrict the defendant's access to the courts for a limited three-year probationary period. Moreover, the defendant may appear *pro se* as a defendant and may petition for relief from the order in an appropriate case.

### Conclusion

Therefore, for the foregoing reasons, the defendant's appeal is sustained in part and denied in part. We affirm the terms of the order of the trial court, as modified by this opinion.

Justice GOLDBERG did not participate.