In re Jaan AARISMAA, IV, TIIA Aarisma, Debtors.

Jaan Aarismaa, IV, Plaintiff,

v.

James M. Jordan d/b/a James Jordan Associates; Shannon Ltd.; and Daniel Jonas, Defendants.

Jaan Aarismaa, IV, Plaintiff,

v.

James M. Jordan, d/b/a/ James Jordan Associates, Defendant.

No. 98–60266.
Adversary Nos. 98–70884A, 98–70875A.

United States District Court, N.D. New York.

April 20, 1999.

Jaan Aarismaa, IV, Oxford, New York, pro se.

Gary L. Karl, of counsel, Harter, Secrest & Emery, Syracuse, New York, for James Jordan and Shannon Ltd. and Daniel Jonas.

Lynn Harper Wilson, Syracuse, New York, for Chapter 13 Trustee.

### DECISION AND ORDER

McAVOY, Chief Judge.

Presently before the Court are the proposed findings of fact and conclusions of law of the Honorable Stephen Gerling, Chief Bankruptcy Judge, pursuant to 28 U.S.C. § 157(c)(1), addressing two adversary proceedings commenced by the debtor, Jaan Aarismaa, IV.

After examining the record, I have determined that the Report–Recommendation is not subject to attack for plain error or manifest injustice. Furthermore, no objections to the Report–Recommendation have been raised. Accordingly, I ADOPT as stated below the Report–Recommendation for substantially the reasons set forth in Judge Gerling's well-reasoned decision. It is therefore,

ORDERED, that defendant Jordan's motion seeking dismissal of the Debtor's July 17, 1998 Complaint is GRANTED; and it is further,

ORDERED, that defendants' motion seeking dismissal of the Debtor's July 23, 1998 Complaint is GRANTED; and it is further,

ORDERED, that Debtor's motion for summary judgment with respect to his July 23, 1998 Complaint is DENIED; and it is further,

ORDERED, that defendants' motion seeking a permanent injunction enjoining the Debtor from commencing similar actions against them in the United States Bankruptcy Court for the Northern District of New York is GRANTED to the extent of requiring Debtor to first seek leave of the Bankruptcy Court.

**IT IS SO ORDERED.**

MEMORANDUM–DECISION, PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER AND RECOMMENDATIONS

These matters are before the Court in the context of two adversary proceedings commenced by Jaan Aarismaa, IV ("Debtor" or "Aarismaa"). The Debtor filed a complaint in this Court on July 17, 1998, against James M. Jordan d/b/a James Jordan Associates ("Jordan") ("First Complaint"). In his complaint, the Debtor seeks to recover "equitable and money damages" in connection with a Purchase and Sale Agreement ("Contract") executed by the Debtor and Jordan on December 9, 1992. *See* Exhibit A of Debtor's First Complaint. On July 23, 1998, the Debtor filed a second complaint in which he names not only Jordan, but also Shannon Ltd. ("Shannon"), and Daniel S. Jonas, Esq. ("Jonas") as defendants ("Second Complaint"). Debtor's Second Complaint seeks relief pursuant to 17 U.S.C. § 501 for alleged copyright infringement.[1]

The Debtor served the First Complaint along with a summons, on Jordan at 81 West Main Street, Richfield Springs, New York 13439 by first class mail on July 22, 1998. The Debtor served the Second Complaint, on Jordan, as well as Shannon, on July 27, 1998, at the 81 West Main Street address. With respect to Jonas, the record in the adversary proceeding indicates that on or about September 19, 1998, the Debtor requested that the Bankruptcy Court Clerk's office reissue the summons, which he served, along with the Second Complaint, on Jonas at ConMed Corporation, Legal Department, 310 Broad Street, Utica, New York 13501, on October 2, 1998.

In the interim, on September 30, 1998, the Debtor filed affidavits in support of entries of default on the basis that Jordan had failed to answer either complaint. Entries of default were entered by the Clerk of this Court against Jordan that same day in both adversary proceedings although there has been no entry of any judgments of default.

On October 26, 1998, the Defendants filed a motion seeking to dismiss the Second Complaint. By separate motion, Defendants also seek sanctions against the Debtor pursuant to Rule 11 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), incorporated by reference in Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") ("Rule 11") and

---

1. When referring to the defendants in both adversary proceedings, the Court will refer to them collectively as the "Defendants" for purposes of this decision although the two proceedings have not been consolidated.

request a permanent injunction enjoining the Debtor from commencing similar actions against them in this Court. An amended motion was filed on November 23, 1998, adding a request that the entries of default in both adversary proceedings be vacated. On December 2, 1998, the Defendants filed an amended motion seeking an order granting sanctions against the Debtor. Also on December 2, 1998, the Defendants filed a second amended motion in both adversary proceedings seeking the same relief as previously requested with respect to dismissal of both complaints and vacatur of the entries of default. In the interim, on November 30, 1998, the Debtor filed a motion for summary judgment with respect to the Second Complaint. All motions were scheduled to be heard on December 8, 1998, in Binghamton, New York.[2]

Following oral argument on behalf of all parties with respect to these motions on December 8, 1998, the matters were submitted for decision.[3] By letter dated December 23, 1998, the Court apprised the parties of its intention to consider the Defendants' motions to dismiss as ones for summary judgment pursuant to Fed. R.Civ.P 56, incorporated by reference in Fed.R.Bankr.P. 7056, in order for the Court to consider materials outside of the pleadings. The parties were afforded twenty (20) days "to file any materials which they wish this Court to consider in connection with the motions now before this Court, including the Debtor's motion for summary judgment."

On January 12, 1999, in response to the Court's request, Defendants' counsel, Gary L. Karl, Esq. ("Karl"), filed an affirmation ("Karl Affirmation"). Included with the Karl Affirmation are numerous documents concerning the prior State Court and District Court proceedings (Exhibits A–R). On January 14, 1998, the Debtor filed an objection to said affirmation pursuant to Fed.R.Civ.P. 56(e), and Rule 103(a) of the Federal Rules of Evidence ("Fed. R.Evid."). The basis for the Debtor's objection is that the Karl Affirmation is not made on personal knowledge and sets forth no facts that would be admissible in evidence. The Debtor suggests that the statements therein are "conclusionary averments and self-serving declarations." Furthermore, the Debtor raises the issue of whether Karl would be competent to testify as to the facts contained in his affirmation. It also appears that the Debtor is suggesting pursuant to Fed. R.Evid. 403 that the documents attached to Karl's Affirmation should not be deemed admissible as evidence on the grounds that they are prejudicial, would cause confusion and waste the Court's time.

### JURISDICTIONAL STATEMENT

The Court has jurisdiction over the parties and subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b), 157(a), (b)(3) and (c)(1).

### FACTS

The Debtor describes himself as doing business as a "fine artist with studio and farm residence" in Oxford, New York. *See* First Complaint at ¶ 1. On January 15, 1998, the Debtor filed a voluntary petition pursuant to chapter 13 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). Although represented by counsel in connection with his petition, he ap-

---

2. At the hearing on December 8, 1998, the Defendants presented the Court with an overview of litigation involving the parties which was conducted in both the New York State Supreme Court, Otsego County ("State Court") and the U.S. District Court for the Northern District of New York ("District Court").

3. The Debtor also filed a motion objecting to the claim of Jordan and Shannon on October 6, 1998. At the hearing on December 8, 1998, the Court adjourned the Debtor's motion to the confirmation hearing scheduled to be held on February 9, 1999, in Binghamton, New York.

pears before this Court *pro se* in connection with the two adversary proceedings.

The Debtor, however, is not a neophyte to our judicial system. Indeed, since entering into the Contract with Jordan in December 1992, he has appeared before both the State Court and District Court in an effort to gain relief from what he perceives to be an infringement of his "Federally protected property rights...." *See* Debtor's Motion for Summary Judgment, filed November 30, 1998, at 2.

By complaint dated April 13, 1995, an action was commenced in State Court on behalf of Jordan and Shannon alleging that Aarismaa had breached the Contract. *See* Karl Affirmation at Exhibit A. On or about June 7, 1995, Aarismaa filed a notice of removal in the District Court. *See* Docket #1 (95–CV–778).[4] The plaintiffs' motion to remand the matter back to State Court was granted August 25, 1995, on the basis that Aarismaa had missed the 30-day deadline for filing a notice of removal. *See Jordan v. Aarismaa,* 896 F.Supp. 94, 96 (N.D.N.Y.1995).

On or about September 1, 1995, Aarismaa sought reconsideration of the Order of August 25th. *See* Docket #26 (95–CV–778). Said motion was denied on October 19, 1995, by Chief Judge Thomas J. McAvoy. *See* Docket #32 (95–CV–778). Debtor then filed another motion in the District Court on or about October 30, 1995, seeking reconsideration of the October 19th Order. *See* Docket #35 (95–CV–778). This motion was also denied by Chief Judge McAvoy on or about November 30, 1995. *See* Karl Affirmation at Exhibit G. In response to the most recent denial, Aarismaa filed a motion on or about December 11, 1995, alleging misrepresentation and an error/mistake of law in connection with the November 30th Order. *See* Docket #41 (95–CV–778). Chief Judge McAvoy, in a Decision and Order signed on January 20, 1996, denied Aarismaa's motion. *See* Karl Affirmation at Exhibit H. By Order dated February 26, 1996, Chief Judge McAvoy imposed sanctions of $250 against Aarismaa. *See* Karl Affirmation at Exhibit I.

On September 2, 1997, Aarismaa again sought removal of the State Court action to District Court. *See* Docket #1 (97–CV–1281). On October 3, 1997, Chief Judge McAvoy signed an order remanding the action back to State Court and awarding sanctions and costs against Aarismaa. *See* Karl Affirmation at Exhibit J. He also enjoined Aarismaa from seeking to remove the State Court action to the District Court in the future. *See id.*

On September 22, 1997, Aarismaa filed a complaint in District Court (97–CV–1376) against, *inter alia,* Jordan and Jonas. *See* Karl Affirmation at Exhibit K. In his complaint, Aarismaa alleged that fraudulent misrepresentations had been made by them in their complaint filed with the State Court. Aarismaa also alleged a breach of contract on the part of Jordan, as well as copyright infringement. On June 26, 1998, Chief Judge McAvoy granted the defendants' motion to dismiss the complaint from the bench with prejudice. *See* Karl Affirmation at Exhibit N. Chief Judge McAvoy further enjoined Aarismaa from filing any pleadings or other papers in the District Court against Jordan, Shannon and Jonas, *inter alia,* without prior

---

4. A court may take judicial notice of a document filed in another court although it may not take judicial notice of the factual findings therein unless Fed.R.Evid. 201(b) is satisfied. *See Kramer v. Time Warner,* 937 F.2d 767, 773, 774 (2d Cir.1991). The Court is also permitted to take judicial notice of decisions of other courts. *See Parente v. Town of West Warwick,* 868 F.2d 522, 523 (1st Cir.1989). The Court has obtained copies of the dockets for actions commenced by the Debtor in District Court since 1995 and will refer to them as necessary herein for purposes of providing a procedural history of the prior litigation involving these same parties now appearing before this Court.

approval of the District Court.[5,6] *See id.*

In the interim, Aarismaa sought dismissal of the State Court action in June of 1996, arguing that the State Court was preempted from determining matters involving copyright infringement. On October 22, 1996, the Honorable Carl J. Mugglin, Justice, New York State Supreme Court, issued a written Decision and Order in which he acknowledged that in Aarismaa's Answer to Jordan's complaint, he affirmatively asserted that Jordan had violated his copyrights but sought no relief from the State Court. He concluded that the "the claims presently pending before this court are limited to breach of contract of which this court has subject matter jurisdiction" and refused to dismiss Jordan's complaint. *See* Karl Affirmation at Exhibit C. Justice Mugglin's denial of Aarismaa's motion for dismissal was affirmed by the Appellate Division, Third Department, on December 4, 1997. *See Jordan v. Aarismaa*, 245 A.D.2d 616, 665 N.Y.S.2d 973 (N.Y.App.Div.1997).

On October 6, 1997, the parties appeared before Justice Mugglin at a bench trial. Jordan's complaint in the State Court action alleged five causes of action: (1) Jordan paid Aarismaa $16,000 for six original works of art that were not delivered pursuant to the Contract; (2) Aarismaa failed to transfer good title to two paintings that were created after performance of the Contract had expired;[7] (3) a joint venture agreement for the advertising and marketing of the reproductions of the two paintings was entered into with Aarismaa; (4) as a result of Aarismaa's refusal to transfer the paintings to Jordan, Jordan was unable to deliver orders for reproductions of the two paintings to third parties, and (5) Aarismaa breached the implied covenant of good faith and fair dealing. *See* Karl Affirmation at Exhibit A.

After listening to the testimony, Justice Mugglin concluded that Jordan had established by a preponderance of the evidence that he had fully performed under the Contract by paying the $16,000 and that Aarismaa had breached the Contract by failing to deliver any original works of art by June 30, 1993, as set forth in the Contract. Justice Mugglin also found that the parties had entered into a verbal joint venture agreement for the advertising and marketing of reproductions of the Rodeo Paintings. He gave no credence to Aarismaa's testimony that the expenses Jordan incurred in connection with advertising the reproductions were to be offset by payment to Aarismaa of media space. *See* Karl Affirmation at Exhibit E.

Justice Mugglin awarded Jordan $16,000 based on a finding that Aarismaa had breached the Contract. He also awarded Jordan $40,000 pursuant to the joint venture agreement which Justice Mugglin concluded Aarismaa had breached. These monies included $12,625 received by Aarismaa in connection with the sale of certain posters, postcards, etc. Justice Mugglin found that Jordan had failed to establish damages in connection with his second cause of action alleging a failure by Aarismaa to transfer good title to the Rodeo Paintings. He also found that there was no evidence to support damages with respect to the fourth cause of action in connection with orders from third parties for the Rodeo Paintings. Nor did Justice Mugglin award separate damages with respect to Jordan's fifth cause of action alleging a breach of the implied covenant of

---

5. On February 12, 1998, Jordan filed a motion pursuant to Code § 362 seeking relief from the automatic stay in order to proceed with motions for dismissal, sanctions and injunction in two other actions in District Court commenced by the Debtor, including 97–CV–1376. A hearing was held in this Court on March 10, 1998, in Binghamton, New York, and on March 23, 1998, the Court signed an order granting the relief.

6. Chief Judge McAvoy's ruling from the bench was memorialized in an Order signed on July 6, 1998 ("July 6th Order"). On July 17, 1998, and July 23, 1998, the Debtor filed the complaints with this Court which are the subject of the motions herein.

7. The two paintings are entitled "Cowboy Up" and "Two Seconds to Go" (hereinafter "Rodeo Paintings"). *See* Exhibits I and K of Second Complaint.

good faith and fair dealing, finding it to be indistinguishable from plaintiff's first cause of action. The "Excerpt of the Proceeding on October 6, 1997" was signed by Justice Mugglin on November 18, 1997. *See id.*

Following the proceeding before Justice Mugglin, Aarismaa, on October 15, 1997, filed another complaint with the District Court. *See* Docket # 1 (97–CV–1488). At the hearing held on June 26, 1998, Chief Judge McAvoy granted the defendants' motion to dismiss the Debtor's complaint, which was memorialized in a written Order dated August 7, 1998. *See* attachment to Defendants' Second Amended Motion, filed December 2, 1998. In addition to dismissing the complaint with prejudice, Chief Judge McAvoy enjoined the Debtor from filing any pleadings or other papers in the District Court against Jordan, Shannon and Jonas without prior permission of the District Court, just as he had in 97–CV–1376. *See id.*

On June 24, 1998, two days prior to the hearing before Chief Judge McAvoy on the defendants' motion to dismiss Debtor's complaint, Aarismaa filed another complaint in the District Court (98–CV–992) alleging that Jordan had violated Aarismaa's copyright by displaying at least one of his paintings in Judge Mugglin's courtroom at the bench trial on October 6, 1997. *See* Karl Affirmation at Exhibit Q. On July 2, 1998, on motion by the defendants, Chief Judge McAvoy dismissed the complaint with prejudice and signed an Order to that effect on July 10, 1998, "in accordance with the Court's prior Order" which required Aarismaa to first seek permission of the District Court before filing any pleadings against the defendants. *See* Karl Affirmation at Exhibit R.

### *ARGUMENTS*

As an initial argument in support of dismissal of the First and Second Complaints, the Defendants assert that the Debtor's commencement of the two adversary proceedings violated the July 6th Order of the District Court which enjoined the Debtor from filing any pleadings or papers in the District Court without first seeking leave. Defendants take the position that because the Bankruptcy Court is a division of the District Court, Chief Judge McAvoy's July 6th Order is applicable to the Complaints filed by the Debtor herein.

On a more substantive basis, Defendants contend that the adversary proceedings are barred under the theories of *res judicata* and collateral estoppel. Defendants contend that the issues are identical to those decided by the State Court and that they were fully litigated before Justice Mugglin. Accordingly, the Defendants assert that the Bankruptcy Court must give preclusive effect to the State Court judgment.

In response, the Debtor makes the argument that if this Court were to accept the Defendants' argument that the State Court decision is *res judicata* with respect to the issues raised in his Second Complaint, which is largely based on arguments of copyright infringement pursuant to Title 17, then this Court should conclude that the State Court's judgment is a nullity because a state court is pre-empted from determining rights under Title 17.

Defendants also seek sanctions against the Debtor pursuant to Fed.R.Bankr.P. 9011 in order to deter the Debtor from repeating his course of conduct which occurred in the District Court. Defendants contend that the Debtor's repeated complaints, whether filed in District Court or the Bankruptcy Court, are intended merely to harass them or cause unnecessary delay and needless increase in the litigation costs. In this regard, the Defendants suggest that the Debtor should be held in contempt for violating Chief Judge McAvoy's July 6th Order. They point out that the Debtor's position has no basis in law as all issues were previously addressed by the State Court and judgment entered therein. In response the Debtor takes the position

that the Defendants in suggesting fraud on his part and alleging improper use of the U.S. mail, are alleging that he is a felon. The Debtor contends that he should be allowed to defend his good name and reputation and, accordingly, should be allowed an opportunity to investigate the source and factual support for what he deems to be criminal charges. He argues that "[a] judgment entered on the facts presented that are unsupported would amount to a criminal conviction of multiple counts of felonies without a trial." *See* Debtor's Reply/Answer filed on December 3, 1998 at 3.

With respect to the Second Complaint, the Debtor seeks summary judgment against the Defendants. The Debtor provides proof of his ownership of the copyrights with respect to the Rodeo Paintings and argues that pursuant to 17 U.S.C. §§ 501 and 504, the Defendants infringed on those copyrights.

## DISCUSSION

### Entry of Default

■ As noted above, on September 30, 1998, entries of default were entered by the Bankruptcy Court Clerk against Jordan in both adversary proceedings as a result of Jordan's failure to answer either complaint. Jordan acknowledges that the address used by the Debtor in serving the summons and complaints was the address of his place of business. He indicates that he previously had instructed his employees to return any mail received from the Debtor, however. It is Jordan's position that the Debtor was well aware that Jordan was represented by the law firm of Harter, Secrest & Emery (the "Firm") and that Debtor should have served the Firm with a copy of both summons and complaints.

■ Fed.R.Bankr.P. 7004(b)(1) allows for service within the United States by first class mail on an individual at his/her place of business. There is nothing in the Bankruptcy Rules that requires that a defendant's attorney be served unless the defendant is a debtor. *See* Fed.R.Bankr.P. 7004(b)(9). The fact that the Debtor knew that Jordan was represented by the Firm and failed to serve it is of no consequence.

Jordan is not without remedy, however. Fed.R.Bankr.P. 7055, which incorporates by reference Fed.R.Civ.P. 55, allows the Court in its discretion to set aside an entry of default for "good cause." *See* Fed.R.Bankr.P. 7055(c).[8] The facts to be considered by the Court include "whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented." *Meehan,* 652 F.2d at 277. In considering these factors, the Court is mindful that a default judgment is considered an "extreme sanction" which is to "remain a weapon of last, rather than first, resort." *Id.* (citations omitted).

It is clear in this instance that the defaults were not willful as Jordan had no knowledge of either complaint. Setting aside the entry of default should not prejudice the Debtor since there has been no judgment or award of damages entered by the Court. It also appears that Jordan may have a meritorious defense in connection with both adversary proceedings as will be discussed below. Therefore, the Court deems it appropriate to set aside the entries of default in both adversary proceedings.

### July 6th Order of U.S. District Court

■ The next argument to be addressed is that raised by the Defendants, namely

---

**8.** Fed.R.Civ.P. 55 also allows the Court to set a judgment by default aside provided one of the criteria set forth in Fed.R.Civ.P. 60(b), including "excusable neglect," is satisfied. However, since there has been no judgment by default entered in either adversary proceeding, it is not necessary for the Court to consider the higher standard of "excusable neglect" set forth in Fed.R.Civ.P. 60(b). *See Meehan v. Snow,* 652 F.2d 274, 276 (2d Cir. 1981) (citations omitted).

that the Debtor violated Chief Judge McAvoy's July 6th Order which prohibited the Debtor from filing any pleadings or papers in the District Court against the Defendants without first seeking leave to do so. The language of the July 6th Order, as submitted to the District Court, initially enjoined the Debtor from filing any pleadings or other papers in "any Court." This language was amended by Chief Judge McAvoy to provide in "the United States District Court for the Northern District of New York."

Admittedly, the Bankruptcy Court is a unit of the District Court, *see* 28 U.S.C. § 151; however, it is not "the United States District Court" as referenced in the July 6th Order. The language of the July 6th Order makes no reference to the Bankruptcy Court and any pleadings filed therein despite the fact that Chief Judge McAvoy was well aware that Aarismaa had filed for bankruptcy relief; however, at the time of the July 6th Order the Debtor had not commenced any adversary proceedings in the Bankruptcy Court.

The District Court has the option of withdrawing any proceeding referred to the Bankruptcy Court on its own motion or the timely motion of any party for cause. *See* 28 U.S.C § 157(d). There is no evidence before this Court to suggest that the District Court subsequently sought to withdraw the reference of either proceeding; nor have the Defendants sought to have the two adversary proceedings withdrawn to the District Court for cause. Therefore, this Court finds no merit to the Defendants' argument that the July 6th Order applied to any filings the Debtor might choose to make in the Bankruptcy Court.

*Subject Matter Jurisdiction*

■ Although not raised by either party, the Court must also consider whether the adversary proceedings commenced by the Debtor are core or non-core before rendering any decision with respect to the motions herein. The Court's subject matter jurisdiction is defined in 28 U.S.C. §§ 157 and 1334. *See Plaza at Latham v. Citicorp. North America, Inc.*, 150 B.R. 507, 510 (N.D.N.Y.1993). This Court has subject matter jurisdiction with respect to (1) cases "under title 11," (2) civil proceedings "arising under title 11," (3) civil proceedings "arising in" a case under title 11 and (4) civil proceedings "related to" a case under title 11. 28 U.S.C. § 157(a). The first three categories are considered "core" proceedings in which a bankruptcy court has the power to enter appropriate final orders and judgments subject only to a right of appeal. *See* 28 U.S.C. §§ 157(b)(1) and 158. On the other hand with respect to matters determined to be merely "related to," a bankruptcy court may only "submit proposed findings of fact and conclusions of law to the district court and may not enter final orders and judgment." 28 U.S.C. § 157(c)(1).[9]

Section 157(b)(3) authorizes the bankruptcy judge to make a determination whether a proceeding is a "core" proceeding or otherwise related to the bankruptcy case. In this case, the causes of action in the Complaints were not created or determined by any provision in the Bankruptcy Code; therefore, they do not "arise under" title 11. *See id.* at 510 n. 4 (citations omitted). Furthermore, they clearly do not involve administrative matters that arise only in a bankruptcy case. Indeed, the causes of action based on alleged breach of contract and copyright infringement arose outside of the bankruptcy case prior to the filing of the Debtor's petition. They cannot, therefore, be deemed to "arise in" the bankruptcy case. *See id.* at 511 n. 5. Therefore, the Court must conclude that the adversary proceedings do not involve "core" matters.

---

**9.** A district court may refer "related to" matters to the bankruptcy court to enter final orders and judgment with the consent of all parties to the proceeding. 28 U.S.C. § 157(c)(2).

■ Having determined that the adversary proceedings fail to qualify as "core" proceedings, the Court must also consider whether they are "related to" the bankruptcy case. In *In re Turner*, 724 F.2d 338, 340–41 (2d Cir.1983), the Second Circuit Court of Appeals held that in order to be found to be "related to," the proceeding must have a "significant connection" to the debtor's bankruptcy case.[10] The Second Circuit subsequently clarified its position in this regard in *In re Cuyahoga Equip. Corp.*, 980 F.2d 110 (2d Cir.1992), in which it indicated that "[t]he test for determining whether litigation has a significant connection with a pending bankruptcy proceeding is whether its outcome might have any 'conceivable effect' on the bankruptcy estate." *Id.* at 114 (citations omitted). While it is acknowledged that state law claims such as claims of breach of contract "have traditionally and consistently been found to be non-core in nature due to their tenuous relationship to a bankruptcy case," *Steege v. Northern Trust Bank/O'Hare, N.A.*, 1996 WL 332428 at *2 (N.D.Ill.1996), the Second Circuit has made it clear that "bankruptcy courts are not precluded from adjudicating state law claims when such claims are at the heart of the administration of the bankruptcy estate." *Ben Cooper, Inc. v. Insurance Co. of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d, 1394, 1399 (2d Cir.1990). Conceivably, the outcome of either of the adversary proceedings may have a direct impact on the case and its administration if the Debtor is successful in recovering any monies. The Court concludes that the proceedings are "related to" the Debtor's case and that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 157(c)(1) to consider the Debtor's complaints and to submit proposed findings of fact and conclusions of law to the District Court with respect to the motions for summary judgment.

*Evidentiary Objections*

■ In his objection filed on January 14, 1999, the Debtor requests that the Court strike the Karl Affirmation pursuant to Fed.R.Civ.P. 56(e) on the basis that Karl lacks personal knowledge of the facts. The Second Circuit has made it clear that an attorney's affirmation which is not based on personal knowledge of the relevant facts is to be accorded no weight on a motion for summary judgment. *See Wyler v. United States*, 725 F.2d 156, 160 (2d Cir.1983) (citations omitted). Therefore, the Court will not consider any "facts" set forth in the Karl Affirmation unless they would be admissible if testified to at trial. *See Lakeview Outlets, Inc. v. Uram*, 1996 WL 571520 at *1 (N.D.N.Y.1996). The exhibits attached to the Karl Affirmation will be considered to the extent that they contain evidence that would be admissible at trial. *See Tokio Marine Management, Inc. v. M/V Zim Tokyo*, 1993 WL 322869 at *8 (S.D.N.Y.1993) (citations omitted).

■ Yet, the Debtor contends that the exhibits should not be considered by the Court because their consideration would be unfairly prejudicial to him and would merely serve to confuse the issues and waste the time of the Court. These arguments appear to be made pursuant to Fed. R.Evid. 403 which permits *relevant evidence* to be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues . . . waste of time or needless presentation of cumulative evidence."

With respect to the exclusion of the exhibits based on Fed.R.Evid. 403, the Court begins with the premise that the evidence is *relevant*. In this case, the papers initially filed with the Court set forth many allegations concerning the tortious history of litigation in both the State

---

10. This approach has been found by some courts to be rather narrow. *See e.g. In re Gen. Am. Communications Corp.*, 130 B.R. 136, 156 (S.D.N.Y.1991). The more frequently cited test is that found in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984), which required the court to consider whether the outcome of the proceeding would have any "conceivable effect" on the bankruptcy estate.

Court and the District Court involving the same parties. The Court does not accept the Debtor's contention that the materials somehow unfairly prejudice him. According to the Advisory Committee Notes to Fed.R.Evid. 403, "unfair prejudice" means "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." From the Court's perspective, these documents allow it to make an independent determination concerning what has occurred up to this point in both the State Court and the District Court before addressing the merits of the arguments made by both parties. This is certainly not an "improper basis" upon which to render a decision. In fact, a familiarity with the proceedings in those forums is essential if the Court is to determine whether *res judicata* or collateral estoppel are applicable.

*First Complaint*

On a motion to dismiss a complaint for a failure to state a claim under Fed. R.Civ.P. 12(b)(6), if a court wishes to consider additional materials or documents, the Rule requires that the Court treat the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56. *See Time Warner*, 937 F.2d at 773 (citations omitted). In accordance with the requirements of Fed.R.Civ.P. 12(b)(6), the Court gave the parties notice of its intent to treat the Defendants' motions as ones for summary judgment and afforded the parties an opportunity to submit pertinent materials for the Court's consideration in its letter of December 23, 1998.

Fed.R.Civ.P. 56(c) provides that summary judgment must be granted when there exists "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Federal Deposit Ins. Corp. v. Bernstein*, 944 F.2d 101, 106 (2d Cir.1991). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genu-

ine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Gallo v. Prudential Residential Serv., Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). For purposes of a summary judgment motion, the movant has the burden of showing that there does not exist a genuine issue as to any material fact. *Id.*

As noted above, in the Debtor's First Complaint he alleges that Jordan breached the Contract and that the Debtor is entitled to recover "equitable and money damages." This same agreement between the parties was the subject of a decision rendered by the State Court, which determined that the Debtor had breached not only the Contract but also an oral joint venture agreement. The Bankruptcy Court is required to accord the State Court judgment the same preclusive effect as a state court would give it. *See Burka v. New York City Transit Author.*, 32 F.3d 654, 657 (2d Cir.1994). Under New York law, a party may not relitigate an issue that was necessarily decided in the prior action provided the party had a full and fair opportunity to contest the prior determination. *D'Arata v. New York Central Mutual Fire Ins. Co.*, 76 N.Y.2d 659, 563 N.Y.S.2d 24, 564 N.E.2d 634 (1990). This reflects the strong public policy in favor of judicial economy and against duplicative litigation. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979).

In the State Court, Aarismaa appeared on his own behalf before Justice Mugglin on October 6, 1997. *See* Karl Affirmation at Exhibit E. Justice Mugglin made a finding that Aarismaa had breached the Contract by failing to deliver six original works acceptable to Jordan, defined in the Contract as the "Purchased Works." Justice Mugglin also concluded that an oral joint venture agreement had been entered into by the parties with re-

spect to the Rodeo Paintings and that as a result of breaching that agreement, plaintiffs in the State Court action, namely Jordan and Shannon, were entitled to recover $40,000 from Aarismaa. Justice Mugglin also found no merit in Aarismaa's argument that he was entitled to payment for media space as a setoff against the monies awarded to the plaintiffs.[11]

In the First Complaint now under consideration by this Court, the Debtor alleges as a first cause of action that Jordan breached the Contract. The Debtor argues that Jordan "refused to reduce to writing oral discussions for joint venture ..." thereby breaching ¶ 7 of the Contract.

Paragraph 7 of the Contract provides:

After delivery of the Purchased Works to Buyer, Buyer and Seller will discuss the possibility of reproducing and marketing limited edition copies of the Purchased Works. In the event that the parties desire to proceed with such venture, the parties will enter into a separate marketing agreement. In the event that Buyer and Seller do not enter into such an agreement for the reproduction and marketing of the Purchased Works, Seller agrees that he shall enter into a separate agreement for each work of art to limit copyright use and the purchasers right to use of the Purchased Works or create additional original works substantially similar copies to the Purchased Works.

*See* Exhibit A of First Complaint.

Justice Mugglin made a finding that Aarismaa failed to deliver the "Purchased Works" to Jordan. Accordingly, the only portion of ¶ 7 applicable herein is the provision found in the last sentence whereby Aarismaa, as Seller, agreed to enter into separate agreements with respect to "additional original works." Nothing in the language of the Contract requires Jordan, as Buyer, to enter into any agreement, written or otherwise in this regard.

Therefore, with respect to the Debtor's first cause of action in the First Complaint, the Court must recommend a grant of summary judgment to Jordan based on the finding that nothing in the Contract requires that Jordan enter into an agreement, written or otherwise, with the Debtor to market and sell reproductions of the Debtor's works of art as a joint venture.

Debtor's second cause of action in the First Complaint alleges that between 1993 and 1995 he performed professional services and work product to launch the joint venture for which he received no compensation. In awarding Jordan $40,000 in connection with an oral joint venture agreement between the parties, Justice Mugglin included $12,625 that Aarismaa received in connection with the sale of posters and postcards. Implicit in that award is a finding that Aarismaa was not entitled to set off the cost of professional services and work product. Justice Mugglin found that the parties to the joint venture agreement were simply to divide the profits from the sale of any reproductions of the Rodeo Paintings and gave no credence to Aarismaa's testimony that he was entitled to payment of media space by Jordan and Shannon "in connection with the creation of the advertising and the research necessary for the advertising."

Accordingly, the Court recommends a grant of summary judgment in favor of Jordan on the Debtor's second cause of action on the basis of collateral estoppel, concluding that that issue was decided by the State Court and may not be considered again by this Court.

Debtor for his third cause of action in the First Complaint alleges "conversion by deception." In ¶ 9 of the First Complaint the Debtor alleges that Jordan filed a "notice" with the Otsego County Clerk's office that he was doing business as Shannon, Ltd., as a sole proprietorship. The filing of the "notice," identified as a "Business Certificate," occurred on August 24, 1994.

---

11. It appears that Aarismaa failed to appeal the State Court judgment.

*See* Exhibit A of Debtor's Motion for Summary Judgment filed November 30, 1998. The Debtor alleges that "appropriation of a joint venture by conversion without notice" excluded him from the joint venture.

Again the Court concludes that collateral estoppel prevents the Court from revisiting his issue. Justice Mugglin found that a joint venture existed between Jordan/Shannon and Aarismaa and that the Debtor had breached that agreement. Therefore, the Court must conclude that the Debtor was not excluded from a joint venture with Jordan/Shannon, and there is no genuine issue of material fact. Accordingly, the Court recommends a grant of summary judgment in favor of Jordan dismissing the Debtor's third cause of action.

The fourth cause of action in the First Complaint seeks recovery for storage of the paintings produced pursuant to the Contract. However, as noted above, Justice Mugglin concluded that Aarismaa had breached the Contract by failing to deliver the "Purchased Works." The Contract provides that the "Purchased Works" were limited to those selected by Jordan and Jordan was entitled to terminate the Contract if he failed to select any and was also entitled to a full refund. *See* ¶ 3 of the Contract. There is nothing in the Contract which requires that Jordan pay for the storage of any of the works of art whether he elected to purchase any or not. Accordingly, the Court concludes that there is no genuine issue of material fact and will again recommend a grant of summary judgment in favor of Jordan dismissing the fourth cause of action.

Debtor's fifth and final cause of action in the First Complaint seeks recovery for the storage of the two Rodeo Paintings. Apparently in the State Court litigation, Aarismaa testified that he was entitled to payment from Jordan for media storage and Justice Mugglin made a finding that Aarismaa's testimony was not credible in this regard. Having declined to consider an award offsetting the expenses incurred by Jordan with those allegedly incurred by Aarismaa in the State Court's awarding of $40,000 to Jordan and Shannon in connection with the joint venture agreement, this Court is bound by Justice Mugglin's findings on the issue. Therefore, this Court will recommend a grant of summary judgment to Jordan dismissing the fifth cause of action.

*Second Complaint*

 The Court is confronted with something of a dilemma with respect to the Debtor's Second Complaint. It is evident from a comparison of the Second Complaint, filed on July 23, 1998, in this Court with the one filed in the District Court a month earlier on June 24, 1998 (98–CV–992), *see* Karl Affirmation at Exhibit Q, which was dismissed by Chief Judge McAvoy on July 2, 1998, *see* Karl Affirmation at Exhibit R, that the causes of action and the relief sought in both complaints are identical.

For this Court to conduct a trial in a non-core matter and then refer its findings of fact and conclusions of law to the District Court for final determination would be a waste of judicial resources, particularly if it is the case, as alleged, that Chief Judge McAvoy's dismissal is currently on appeal with the U.S. Court of Appeals for the Second Circuit. Furthermore, this Court would be remiss if it were to allow what appears to be a blatant attempt on the part of the Debtor to circumvent the July 2, 1998 Order of the District Court which dismissed his complaint. The Court concludes that any determination of the merits of the Debtor's arguments, whether on a motion for summary judgment or following a trial on the merits, is best left to the District Court in the event that the Second Circuit concludes that the Debtor is entitled to an adjudication of the issue of whether an infringement of his copyrights occurred. This conclusion is buttressed by the fact that the issues involve, at least in part, a matter of Federal copyright law with which the District Court is likely to have far more familiarity and expertise

than this Court. Congress has made it clear that this Court's jurisdiction and authority to address matters related to a bankruptcy case are by reference from the District Court and, under the circumstances, that reference does not include granting relief to Aarismaa which the District Court previously saw fit to dismiss.

### Permanent Injunction

■ The Defendants seek a permanent injunction prohibiting the Debtor from continuing or commencing similar actions against them in this Court. The Second Circuit Court of Appeals has recognized the need for a permanent injunction "[a]s a result of an extraordinary pattern of vexatious and harassing litigation. . . ." *See In re Martin–Trigona*, 9 F.3d 226, 227 (2d Cir.1993). Citing to substantial caselaw, the Second Circuit noted in *Martin–Trigona* that "courts may resort to restrictive measures that except from normally available procedures litigants who have abused their litigation opportunities." *Id.* at 228. Such "restrictive measures" have included foreclosing the filings of pleadings in a particular case or requiring that leave of court first be sought. *Id.* at 228–29 (citations omitted).

Since the District Court has original and exclusive jurisdiction of all cases under title 11 pursuant to 28 U.S.C. § 1334, this Court recommends that the Debtor be required to seek leave of the District Court to file any pleadings or papers in this Court which involve the Defendants herein, particularly since the matters are likely to be non-core and would ultimately need to be referred by this Court to the District Court for final determination. While the Debtor is entitled to his "day in court," his dissatisfaction with the results up to this point, both in the State Court and the District Court, does not entitle him to circumvent the decisions of those courts by seeking the same relief in the Bankruptcy Court under these circumstances.

### Sanctions[12]

■ As noted by the District Court in its decision of January 20, 1996, in *Jordan v. Aarismaa* (95–CV–778), in determining whether to impose sanctions under Rule 11, a court should consider

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated case; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

*See* Karl Affirmation at Exhibit H at 6 (citing to Advisory Committee Notes to 1993 Amendment of Rule 11).

In reviewing these factors, it is clear that Aarismaa has engaged in similar conduct in other litigation in the State Court and the District Court. However, he has not as yet demonstrated such conduct in this Court at least as far as requiring numerous appearances by the Defendants and imposing a burden on the Court's calendar. The parties have appeared in Court but once. There has been no discovery and no trial. Most of the papers filed by the Debtor, particularly since the hearing on December 8, 1998, have been

---

12. The Debtor asserts that he should have an opportunity to investigate and to defend himself against what he alleges are criminal charges made by the Defendants against him in their request for a finding by this Court of contempt and an award of sanctions. Upon a review of the Defendants' motion, the Court finds no merit whatsoever in the Debtor's argument. Even if the Debtor's interpretation of the Defendants' allegations were correct, this Court would have no jurisdiction to address them. Therefore, the Court finds no basis for delaying a ruling on the motion now before the Court.

by the Debtor and, due to their untimeliness have not appeared on the Court's calendar and have not been considered by the Court. The adversary proceedings commenced in this Court by the Debtor against the Defendants represent clear attempts to obtain what has previously been denied him. While describing his efforts as being made on behalf of the estate in an effort to increase the available distribution to his creditors, it is clear to the Court that these efforts do not stem from any such altruistic motives and, instead, evidence an unrelenting determination on his part to obtain the relief to which he believes he is entitled by virtue of both state and federal copyright laws. He apparently believed that this Court would afford him one more forum in which to vent his frustrations and dissatisfaction with the relief afforded (or denied) him in both the State Court and the District Court. As a *pro se* litigant it is reasonable to believe that he had no understanding of the limited and somewhat confusing jurisdiction of this Court and the fact that it is the District Court that has the ultimate authority for determining the nature of any relief involving non-core proceedings. Based on an assumed lack of understanding of the extent of this Court's jurisdiction, the Court does not find that the Debtor willfully violated the "letter" of the District Court's Order although it is clear that he did violate its "spirit."

At this stage in these proceedings, the Court declines to impose sanctions. However, based on the decision herein, the Court will not consider any further papers or pleadings filed by the Debtor which seek relief from the Defendants pending the District Court's final determination on the recommendations made herein.

Based on the foregoing, it is hereby

ORDERED that Defendants' motion seeking vacatur of all of the entries of default in Adv.Pro. 98–70875A and Adv. Pro. 98–70884A is granted; it is further

ORDERED that Defendants' motion seeking sanctions against the Debtor pursuant to Fed.R.Bankr.P. 9011 be denied; it is further

RECOMMENDED to the United States District Court for the Northern District of New York pursuant to 28 U.S.C. § 157(c)(1) that

1) Jordan's motion seeking dismissal of the Debtor's First Complaint be granted;

2) Defendants' motion seeking dismissal of the Debtor's Second Complaint be granted;

3) Debtor's motion for summary judgment with respect to his Second Complaint be denied;

4) Defendants' motion seeking a permanent injunction prohibiting the Debtor from continuing or commencing similar actions against them in this Court be granted to the extent of requiring that the Debtor first seek leave of the District Court; and

5) the District Court withdraw the reference of any adversary proceedings commenced in the future by the Debtor against any of the Defendants herein.